UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 08-12154-RWZ

BARRY NOLAN

v.

CN8, THE COMCAST NETWORK, *et al.*

MEMORANDUM OF DECISION

September 21, 2010

ZOBEL, D.J.

## I.     Overview

Plaintiff Barry Nolan ("Nolan"), a TV newscaster, brought this action for wrongful discharge against his former employer, CN8 (a Massachusetts-based television station), its parent company, The Comcast Network, LLC ("Comcast"), and two of its executives, Eileen Dolente and Jon Gorchow.  He claims that he was terminated in retaliation for the exercise of his right to free speech under state law.  Defendants have moved for summary judgment.  (Docket # 20.)

## II.    Facts

These facts are not in dispute.  Nolan, a long-time television personality and five-year employee of Comcast, was the host and executive producer of a political talk-show, "Backstage with Barry Nolan," on Comcast's local station, CN8 Network.  His employment was governed by a written employment agreement.

During the course of his career in journalism, Nolan participated in various professional activities and was a member of several trade associations. On May 10, 2008, the National Academy of Television Arts Sciences ("NATAS") hosted a broadcast of the Emmy Awards Ceremony, which Nolan attended. He had earlier learned that NATAS planned to present an award to FOX News Channel host Bill O'Reilly. Nolan objected to O'Reilly's receiving the award and he voiced his objection.

Prior to the event, Nolan used his Comcast work account to email NATAS members to urge them not to give the award to O'Reilly. After defendants cautioned him about its policy regarding use of work email accounts, he used his personal account to express his objection to O'Reilly's selection to the Boston Herald; he posted on several internet blogs; and he contacted other nominees to express his disagreement. Nolan's supervisor at CN8, Dolente, admonished Nolan not to make a "scene" at the ceremony. Nevertheless, on the night of the ceremony, Nolan concedes he continued his protest at the site of the event. He left on a bar and several tables, and personally distributed, a 6-page leaflet containing what he describes as "factual information about O'Reilly." However, when he was asked by security to refrain from distributing the leaflets, he complied. Timothy Eagan, President of the New England Chapter of NATAS, spoke with Nolan to express his dismay at Nolan's protest. Finally, at the moment the award was presented to O'Reilly, Nolan, seated at Comcast's table, stood up and walked out. As a result of his actions, defendants immediately suspended Nolan; he was terminated shortly thereafter.

Defendants contend that Nolan's employment was governed by his employment

contract, which contained a provision allowing for termination in the event Nolan engaged in conduct which caused embarrassment, and disadvantaged Comcast's business interests.  Alternatively, Comcast points to language making his employment at-will; he was therefore subject to termination for any reason, or no reason at all. Nolan argues that he was terminated in retaliation for having exercised his free speech rights in violation of Massachusetts Civil Rights Statute, Mass Gen. Laws ch. 12, § 11I. He further contends that pursuant to the terms of his employment agreement, termination must be supported by cause; since his actions did not result in injury to Comcast, but were an exercise of his private free speech rights, he should prevail.

## III. Analysis

Summary judgment is appropriate when "the record, including the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, viewed in the light most favorable to the nonmoving party, reveals no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." See Goldman v. First Nat'l Bank, 985 F.2d 1113, 1116 (1st Cir. 1993); see also Fed. R. Civ. P. 56(c).

Plaintiff has invoked the Massachusetts Civil Rights Act, Mass Gen. Laws ch. 12, § 11I ("MCRA"), which provides a remedy when "any person or persons, whether or not acting under color of law, interfere by threats, intimidation or coercion, or attempt to interfere by threats, intimidation or coercion, with the exercise or enjoyment by any other person or persons of rights secured by the constitution or laws of the commonwealth." Id. § 11H (incorporated into § 11I).  To prevail on a claim under the

MCRA, plaintiff must demonstrate that "(1) [plaintiff's] exercise or enjoyment of rights secured by the Constitution or laws of either the United States or the Commonwealth, (2) ha[ve] been interfered with, or attempted to be interfered with, and (3) that the interference or attempted interference was by 'threats, intimidation or coercion.'" Meuser v. Federal Express Corp., 524 F. Supp. 2d 142, 147 (D. Mass. 2007).

### A. Interference With the Exercise of Rights Secured by the Constitution

Defendant does not dispute that plaintiff was exercising rights secured by the Massachusetts Declaration of Rights and the United States Constitution. It denies that it interfered with the exercise of those rights. The argument requires first consideration of the parties' contract, and second, whether in this case, termination of employment can constitute interference with plaintiff's rights.

#### 1. The Governing Employment Agreement

Nolan's employment with Comcast was governed by a series of written employment agreements that provided for successive 12-month terms, the most recent, from 5/6/2007 through 5/2/2009 ("Employment Agreement"). Section 6(b) of the 2007 Employment Agreement provides that Comcast may terminate plaintiff's employment when:

> (i)  The Company determines in its sole and absolute discretion that Employee should be removed from the position Employee is presently employed under this Agreement;
> (ii) Employee breaches his or her obligations under this Agreement....;
> (iii) Employee willfully fails or refuses to satisfactorily perform Employee's obligations under this Agreement;
>
> ***
>
> (v)  Employee engages in any other act or omission warranting termination of

> employment in accordance with the policy, including anything which, in the Company's sole and absolute judgment, brings Employee or the Company into public disrepute, contempt, ridicule or scandal, or which, in the Company's sole and absolute judgment is offensive to a substantial segment of the viewing public or would reflect unfavorably on the Company's interests or reputation.

In addition, in Section 1(b) of that Employment Agreement, Nolan agreed he would

> not participate in any project or engagement that brings Employee or the Company into public discredit, ridicule or scandal or that could be considered a conflict of interest with the Company. *** Failure to comply with this Paragraph 1(b) is a material breach of this Agreement.

### 2. Termination Under the Employment Agreement

Comcast's contention that, as a matter of law, termination of employment rights cannot constitute "interference" within the meaning of the statute, is not as clear as its assertion. Courts have, in fact, held that termination of employment or adverse employment action may constitute "interference" with constitutional rights in certain circumstances. See Poh v. Mass. Correction Officers Fed. Union, No. 03-11987-RWZ, 2006 WL 1877089, *6 (D. Mass. July 7, 2006) (plaintiff sufficiently stated an MCRA claim on allegations that defendant Union interfered with plaintiff's free speech rights by expelling him).

However, courts have also held that termination of employment does not constitute "interference" with a constitutional right where there were grounds not to renew a contract for term or where the employee was at-will. For example, in Korb v. Raytheon Corp., 410 Mass. 581, 585 (1991), a former spokesman for Raytheon publicly advocated a reduction in defense spending, which was adverse to Raytheon's financial interest. The court held that his termination did not interfere with his rights as he made

public comments that were inconsistent with his employer's interests.[1]  The SJC reasoned, "[a]lthough Korb has a secured right to speak out on matters of public concern, and he has a right to express views with which Raytheon disagrees, he has no right to do so at Raytheon's expense ... Korb is free to express whatever opinions he wishes.  Raytheon need not pay him to do so."  Id. at 585.  See also Willits v. Roman Catholic Archbishop of Boston, 411 Mass. 202, 204-205 (1991) (affirming grant of summary judgment on behalf of employer-school where school declined to renew school teacher's contract as a result of her union organizing activities).

Thus, the question is whether Comcast had cause under the Employment Agreement to terminate him or, alternatively, whether plaintiff was, in reality, an employee at-will.

### a. Termination for Cause Under the Employment Contract

Comcast's written notice of termination cites Section 1(b) and 6(b)(v) of the 2007 Employment Agreement as grounds for termination.

Nolan denied that Comcast had cause for termination; his actions did not violate the Employment Agreement because they did not bring Comcast into public disrepute, contempt, ridicule or scandal, or otherwise "reflect unfavorably on the Company's interests or reputation."  Employment Agreement ¶ 6(b)(v).  He was not disruptive at the event, and he disputes that he disregarded advance warnings by Comcast executives.  He contends that he made it clear at all times that his speech was undertaken in his

---

[1] The court did note a significant exception to this rule, namely, where an employee speaks out on a matter of public concern, such as a whistleblower speaking against his employer's interest.  See Korb at 584 & n. 3.  It has no application here.

6

personal, not professional, capacity. The difficulty with his argument is that under the terms of the contract, Comcast — not Nolan — is the sole arbiter of whether he violated the contract. Here, it determined that he had. It had a business interest in cultivating a relationship with both NATAS and Fox News, and it determined that Nolan's actions, whether undertaken in his personal or professional capacity, were contrary to its interests.

Nolan objects that the language anointing Comcast as the sole judge of his conduct and its meaning under the contract renders the contract illusory. He cites the Restatement (Second) of Contracts § 76 cmt. D, which states that "[w]ords of promise do not constitute a promise if they make performance entirely optional with the purported promisor." But Section 6(b) does not make performance by Comcast "entirely optional" and therefore illusory; rather, it simply provides that Comcast shall be the sole judge of whether the contract's terms have been violated. This is a provision Nolan accepted by signing the contract. Moreover, he cites no case in which courts have invalidated a contract containing a similar provision. By contrast, courts have upheld employee terminations in contracts in which the employer had the sole discretion to evaluate employee performance. See Gallas v. Supreme Court of Penn., No. CIV. A 96-6450, 1998 WL 22081, *1, *6 (E.D. Pa. Jan. 22, 1998) (finding employee had no right to continued employment where terms of contract explicitly vested sole discretion to evaluate performance with employer).

If the contract were illusory, the Employment Agreement would be wholly unenforceable, making Nolan an at-will employee.

### b.     Employment-At-Will

Section 6(b)(i) of the 2007 Employment Agreement states that Comcast may terminate Nolan when it "determines in its sole and absolute discretion that Employee should be removed from the position." Although it did not invoke this section in its letter of May 12, 2008 terminating Nolan, defendant nevertheless asserted at oral argument that under this provision, plaintiff's employment was at-will and it had the power to terminate plaintiff for any reason or no reason at all. Plaintiff responds that employment is either governed by a contract for a term <u>or</u> is at will — but it cannot be both. This contract, he says, is for a term, and to the extent Section 6(b)(i) suggests at-will employment, it is inconsistent with the rest of the contract and should be striken from the contract.

Section 6(b)(i) does not create employment at-will in the traditional sense of that term, that is, employment which is "terminable by either the employee or the employer without notice, for almost any reason or for no reason at all." <u>Jackson v. Action for Boston Cmty. Dev., Inc.</u>, 403 Mass. 8, 9 (1988). Rather, Section 6(b)(i) allows Comcast to terminate Nolan without notice, for any reason, or no reason at all. Although one-sided, it is nonetheless valid. Plaintiff cites no case in which a court has held that the inclusion of such language is incompatible with a contractual employment arrangement. <u>See</u>, <u>e.g.</u>, <u>Shen v. Biogen</u>, 523 F .Supp. 2d 48, 53-54 (D. Mass. 2007) (dismissing employee's breach of contract claim where defendant explicitly reserved the right in the contract to "terminate [Plaintiff's] employment at any time at [Defendant's] sole discretion").

While the MCRA prohibits not only state, but also private interference with the exercise of constitutional rights, see, e.g., Poh v. Mass. Correction Officers Fed. Union, No. 03-11987-RWZ, 2006 WL 1877089, *6 (D. Mass. July 7, 2006), it nevertheless has long been the case that private employers may condition employment upon a voluntary abrogation of free speech rights.  See Dixon v. Coburg Dairy, Inc.., 369 F.3d 811, 817, n. 5 (4th Cir.2004) (noting the general rule that private employees are entitled to less First Amendment protection than public employees).  Since Comcast was entitled to terminate Nolan for any reason, or no reason at all, and since, in its sole discretion, it had cause to terminate his employment, Defendants' Motion for Summary Judgment is allowed.[2]

## IV. Conclusion

For the reasons discussed above, Defendants' Motion for Summary Judgment (Docket # 20) is ALLOWED.  Nolan's Motion to Strike Certain Exhibits and Paragraphs of Defendants' Statement of Facts and Affidavits (Docket # 30) on the grounds that such materials contain hearsay statements and inadmissible documents is DENIED.

---

[2] Comcast raises the additional argument that Nolan cannot establish the third element of an MCRA claim: that the interference with constitutional rights was by "threats, intimidation or coercion."  Since the court concludes that Plaintiff failed to establish the first element (i.e., that Defendants interfered with the exercise of his rights), I need not reach the question.

| | |
|---|---|
| September 21, 2010 | /s/Rya W. Zobel |
| DATE | RYA W. ZOBEL |
| | UNITED STATES DISTRICT JUDGE |